No. 22-10704

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

DIANA CLUFF, as personal representative of
the ESTATE OF GUSTAVO BEAZ,

*Plaintiff-Appellant,*

vs.

MIAMI-DADE COUNTY, ARTIS WEST,
ALLISON AULT, and JEROME WELDON,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Florida
No. 21-CV-23342-KMW

## ANSWER BRIEF FOR APPELLEES

GERALDINE BONZON KEENAN
MIAMI-DADE COUNTY ATTORNEY
Stephen P. Clark Center
111 N.W. First Street, Suite 2810
Miami, Florida 33128
(305) 375-5151

Zach Vosseler
Assistant County Attorney
*Counsel for Appellees*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The Appellees certify that the Certificate of Interested Persons contained in the Appellant's brief is complete. *See* 11th Cir. R. 26.1-1(a)(3) & 26.1-2(b).

*/s/ Zach Vosseler*
Zach Vosseler
Assistant County Attorney
*Counsel for Appellees*

# STATEMENT REGARDING ORAL ARGUMENT

The Defendants-Appellees respectfully request oral argument. This is an appeal of the district court's order granting in part the Defendants' motion to dismiss. The district court concluded that the Plaintiff-Appellant failed to overcome the individual Defendant paramedics' entitlement to qualified immunity on its Fourteenth Amendment substantive due process claim and failed to state a claim against Defendant Miami-Dade County for municipal liability under 42 U.S.C. § 1983.

This Court has an extensive history of precedential decisions governing substantive due process claims in a noncustodial context. Yet the Plaintiff's initial brief cites practically none of them, with the most glaring absence being the Court's most recent decision, *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323 (11th Cir. 2020). The Plaintiff did not address *L.S.* before the district court, either. The Defendants anticipate, however, that the Plaintiff will assert its interpretation of this and many of the other cases for the first time in its reply brief. Oral argument will afford the Defendants the opportunity that they would otherwise be deprived of to respond to any eleventh-hour arguments the Plaintiff raises, to correct misinterpretations of the Court's decisions, and to distill for the Court the salient issues. In this respect, the Defendants believe the Court's decisional process would be significantly aided by oral argument. 11th Cir. L.R. 34-3(c).

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT.....................................C1

STATEMENT REGARDING ORAL ARGUMENT ............................i

TABLE OF AUTHORITIES........................................................ iv

STATEMENT OF THE ISSUES.................................................... 1

STATEMENT OF THE CASE

 I. Factual Statement ......................................................2

 II. Course of Proceedings and Disposition Below...............................3

 III. Standards of Review .................................................5

SUMMARY OF THE ARGUMENT...............................................5

ARGUMENT

 I. The District Court Properly Dismissed the Substantive Due Process
  Claim because the Paramedics Are Entitled to Qualified Immunity........8

  A. The paramedics did not violate Beaz's substantive due process
   rights because the pleaded facts show that they acted with,
   at most, deliberate indifference, not a purpose to cause harm ...... 10

   1. Allegations that the paramedics acted with
    deliberate indifference do not state a violation
    of substantive due process ..................................... 11

   2. The paramedics had no constitutional duty to provide
    rescue services to Beaz, who was already exposed
    to a risk that they did not create ................................. 18

  B. The Estate has not shown that the paramedics' conduct
   violated clearly established law ..................................... 23

 II. The District Court Properly Dismissed the Municipal Liability Claim... 27

  A. The Estate cannot state a claim based on custom by alleging
   facts about only this incident ...................................... 27

  B. The Estate cannot state a claim based on failure to train
   because the County did not have notice of need to train
   its employees in this particular area ................................. 33

ANSWER BRIEF FOR APPELLEES

III. The District Court Did Not Abuse Its Discretion by Refusing to Grant the Estate's Requests for Leave to Amend, which Appeared in the Conclusion of Its Response to the Motion to Dismiss ..................... 36

CONCLUSION ................................................................. 38

CERTIFICATES OF COMPLIANCE ........................................... 39

CERTIFICATE OF SERVICE .................................................... 39

# TABLE OF AUTHORITIES

C ASES

*Anderson v. City of Minneapolis*,
934 F.3d 876 (8th Cir. 2019)................................................................ 15, 26

*Archie v. City of Racine*,
847 F.2d 1211 (7th Cir. 1988) (en banc) ........................................... 14, 21

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ................................................................................. 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................... 34, 35

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................... 34, 35

\* *Bradberry v. Pinellas County*,
789 F.2d 1513 (11th Cir. 1986)............................................................ *passim*

*Bradley v. Benton*,
10 F.4th 1232 (11th Cir. 2021)................................................................ 26

*Brown v. Pennsylvania Department of Health
Emergency Medical Services Training Institute*,
318 F.3d 473 (3d Cir. 2003)................................................................ 14, 36

*Burgess v. Religious Technology Center, Inc.*,
600 F. App'x 657 (11th Cir. 2015) ......................................................... 32

*Cita Trust Co. v. Fifth Third Bank*,
879 F.3d 1151 (11th Cir. 2018)........................................................... 37, 38

*City of Canton v. Harris*,
489 U.S. 378 (1989) ............................................................................... 33

*City of Tahlequah v. Bond*,
142 S. Ct. 9 (2021) ................................................................................. 8

*Connick v. Thompson*,
   563 U.S. 51 (2011) ...................................................................... 33, 34

*Corbitt v. Vickers*,
   929 F.3d 1304 (11th Cir. 2019) .................................................. 9, 25

*County of Sacramento v. Lewis*,
   523 U.S. 833 (1998) ............................................................ 10, 11, 13

*Craig v. Floyd County*,
   643 F.3d 1306 (11th Cir. 2011) ........................................................ 28

*Crocker v. Beatty*,
   995 F.3d 1232 (11th Cir. 2021) .................................................... 9, 23

*DeShaney v. Winnebago County Department of Social Services*,
   489 U.S. 189 (1989) ........................................................... 10, 14, 22

*Diaz v. Miami-Dade County*,
   424 F. Supp. 3d 1345 (S.D. Fla. 2019) ......................................... 32

*Diaz v. Miami-Dade County*,
   849 F. App'x 787 (11th Cir. 2021) ....................................... 29, 32, 33

*Doe v. Braddy*,
   673 F.3d 1313 (11th Cir. 2012) ....................................................... 11

*Dodd v. Jones*,
   623 F.3d 563 (8th Cir. 2010) ......................................................... 36

*Echols v. Lawton*,
   913 F.3d 1313 (11th Cir. 2019) ............................................ 10, 24, 25

*Estate of Cummings v. Davenport*,
   906 F.3d 934 (11th Cir. 2018) ......................................................... 9

*Gold v. City of Miami*,
   151 F.3d 1346 (11th Cir. 1998) ................................................. 33, 35

*Grech v. Clayton County*,
   335 F.3d 1326 (11th Cir. 2003) (en banc) ................................... 28

*Grider v. Cook*,
  590 F. App'x 876 (11th Cir. 2014) ............................................................ 29

*Gurrera v. Palm Beach County Sheriff's Office*,
  657 F. App'x 886 (11th Cir. 2016) ............................................................ 29

*Jackson v. Byrne*,
  738 F.2d 1443 (7th Cir. 1984) ................................................................. 19

*Knight ex rel. Kerr v. Miami-Dade County*,
  856 F.3d 795 (11th Cir. 2017) ..........................................................27, 28, 34

* *L.S. ex rel. Hernandez v. Peterson*,
  982 F.3d 1323 (11th Cir. 2020) ........................................................... *passim*

*Lewis v. City of West Palm Beach*,
  561 F.3d 1288 (11th Cir. 2009) ............................................................... 23

*Lozman v. City of Riviera Beach*,
  138 S. Ct. 1945 (2018) ...................................................................27, 28

*Maddox v. Stephens*,
  727 F.3d 1109 (11th Cir. 2013) ..............................................................8, 9

*Marantes v. Miami-Dade County*,
  649 F. App'x 665 (11th Cir. 2016) ........................................................... 29

*Matamoros v. Broward Sheriff's Office*,
  2 F.4th 1329 (11th Cir. 2021) ............................................................ 17, 32

*Monell v. Department of Social Services*,
  436 U.S. 658 (1978) .......................................................................... 28

*Morris v. Town of Lexington*,
  748 F.3d 1316 (11th Cir. 2014) ................................................................ 9

*Neal ex rel. Neal v. Fulton County Board of Education*,
  229 F.3d 1069 (11th Cir. 2000) ........................................................... 11, 12

*Newton v. Duke Energy Florida, LLC*,
  895 F.3d 1270 (11th Cir. 2018) .......................................................... 5, 36, 37

*Nix v. Franklin County School District*,
311 F.3d 1373 (11th Cir. 2002)...................................................... 10

*Pearson v. Callahan*,
555 U.S. 223 (2009) ................................................................ 8

*Perez v. Suszczynski*,
809 F.3d 1213 (11th Cir. 2016) .................................................. 23

*Plumhoff v. Rickard*,
572 U.S. 765 (2014)............................................................... 23

*Powell v. Snook*,
25 F.4th 912 (11th Cir. 2022)........................................ 23, 24, 25

*Quality Auto Painting Center of Roselle, Inc. v. State Farm Indemnity Co.*,
917 F.3d 1249 (11th Cir. 2019) (en banc) ........................................5

*Rankin v. Board of Regents*,
732 F. App'x 779 (11th Cir. 2018) ............................................. 29

*Rosenberg v. Gould*,
554 F.3d 962 (11th Cir. 2009) .................................................. 37

*Salazar v. City of Chicago*,
940 F.2d 233 (7th Cir. 1991)..................................................... 36

*Saunders v. Duke*,
766 F.3d 1262 (11th Cir. 2014) .................................................. 25

*Slaughter v. Mayor of Baltimore*,
682 F.3d 317 (4th Cir. 2012)..................................................... 16

*Sosa v. Martin County*,
13 F.4th 1254 (11th Cir. 2021) .............................................. 31, 32

*T.R. ex rel. Brock v. Lamar County Board of Education*,
25 F.4th 877 (11th Cir. 2022)..................................................... 9

*T.W. ex rel. Wilson v. School Board of Seminole County*,
610 F.3d 588 (11th Cir. 2010) .................................................. 10

*Vinyard v. Wilson*,
311 F.3d 1340 (11th Cir. 2002) ................................................................. 25

\* *Waldron v. Spicher*,
954 F.3d 1297 (11th Cir. 2020) ................................. 10, 11, 12, 13, 24, 27

\* *Weiland v. Palm Beach County Sheriff's Office*,
792 F.3d 1313 (11th Cir. 2015) ............................................. 28, 33, 34

\* *Wideman v. Shallowford Community Hospital, Inc.*,
826 F.2d 1030 (11th Cir. 1987) .......................................... *passim*

*White v. Lemacks*,
183 F.3d 1253 (11th Cir. 1999) ................................................. 10

*White v. Pauly*,
137 S. Ct. 548 (2017) ................................................................... 24

*Youmans v. Gagnon*,
626 F.3d 557 (11th Cir. 2010)..................................................... 26

*Young v. City of Augusta ex rel. DeVaney*,
59 F.3d 1160 (11th Cir. 1995) .................................................... 35

STATUTES & RULES

28 U.S.C. § 1367(c)(3) ...................................................................5

42 U.S.C. § 1983 .................................................... *passim*

Fed. R. Civ. P. 7(b)(1) ....................................................... 36, 37

Fed. R. Civ. P. 12(b)(6) ........................................................ 4

OTHER AUTHORITIES

Memorandum to Counsel, *Sosa v. Martin County*,
No. 20-12781 (11th Cir. Jan. 7, 2022)........................................... 31

# STATEMENT OF THE ISSUES

The Estate of Gustavo Beaz has appealed the district court's order dismissing its federal civil rights claims with prejudice. The amended complaint alleged that three Miami-Dade County paramedics somehow violated Beaz's substantive due process rights under the Fourteenth Amendment when they responded to an emergency call at his home did not revive him. The amended complaint further asserted a municipal liability claim against Miami-Dade County based on these events pursuant to 42 U.S.C. § 1983. The district court ruled that the substantive due process claim against the individual paramedics was barred by qualified immunity and that the Estate failed to state a municipal liability claim against the County.

The issues on appeal are:

1. *Substantive due process: qualified immunity*. Eleven months after the incident at issue, this Court held that the only way a plaintiff can demonstrate a clearly established violation of substantive due process in a noncustodial context is to demonstrate that the defendant acted with a purpose to cause harm; deliberate indifference is an insufficient level of culpability. The Estate expressly alleges that the paramedics acted with deliberate indifference, and the district court, accepting its allegations as true, found that the paramedics' conduct did not stem from a purpose to cause harm. Did the district court properly grant qualified immunity to the paramedics?

2. *Municipal liability*. This Court routinely affirms dismissals of § 1983 municipal liability claims when the plaintiff does not allege facts concerning prior incidents of unconstitutional conduct by a municipality or its employees. Similarly, stating a claim

1

based on a failure to train requires facts that demonstrate the municipality was aware of a pattern of similar constitutional violations. The only facts alleged in the amended complaint concern this incident. Did the district court correctly conclude that the Estate failed to state a municipal liability claim?

3. *Leave to amend.* The Estate, which had already amended its complaint once, requested leave to amend the complaint again in the conclusion of its memorandum in opposition to the motion to dismiss, without setting forth the substance of a proposed second amendment or attaching a copy. Did the district court abuse its discretion by dismissing the federal claims without granting the Estate's improperly raised request?

## STATEMENT OF THE CASE

### I.  Factual Statement

At just after 2:00 a.m. on April 2, 2019, three Miami-Dade Fire Rescue paramedics—Captain Artis West, Firefighter Allison Ault, and Firefighter Jerome Weldon— responded to an emergency call at the home of 66-year-old Gustavo Beaz, who had activated his medical alert device complaining of breathing difficulty. D.E. No. 1-1, at 6. Upon the paramedics' arrival, one began pulling lifesaving equipment and a stretcher out of the rescue truck. *Id.* at 12. According to Captain West's report of the call, the paramedics found the door unlocked and Beaz sitting in a chair with foam on his nose and mouth. *Id.* at 10. The report further stated that Beaz was unresponsive, cold to the touch, not breathing, and pulseless. *Ibid.* The paramedics attached an EKG to him. *Id.* at 13. The report stated that the reading demonstrated asystole (*i.e.*, flatline), so

the paramedics concluded that Beaz was "dead on arrival." *Id.* at 10.

The Estate disputes Captain West's report. It alleges that Beaz was not dead when the paramedics arrived and that their conduct during the call violated several "industry standards and proper protocols." *Id.* at 12. It also alleges that Beaz had a viable heart rhythm but the paramedics, who were so improperly trained they did not know that heart rhythm was not asystole, "did nothing." *Id.* at 10–11. In essence, the Estate asserts that the paramedics acted with deliberate indifference in failing to treat Beaz and that Miami-Dade County, their employer, has a custom of turning a blind eye to such conduct by its paramedics. *Id.* at 16–24.

## II.   Course of Proceedings and Disposition Below

The Estate, by and through Beaz's daughter Diana Cluff as personal representative, along with Jacqueline Beaz (Beaz's other daughter) and Diana individually, filed suit against Miami-Dade County, Captain West, Firefighter Ault, and Firefighter Weldon in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County on June 30, 2021. D.E. No. 1. The defendants removed to federal court. *Id.* at 1–3. The amended complaint asserted two federal claims—a claim asserting a violation of Beaz's Fourteenth Amendment substantive due process rights brought against the paramedics individually, and a 42 U.S.C. § 1983 municipal liability claim against Miami-Dade County—as well as five state law claims. D.E. No. 1-1, at 16–31.[1] The defendants moved

---

[1]   The amended complaint asserted several claims against Miami-Dade Fire Rescue and several claims by Diana and Jacqueline individually, as well, but the plaintiffs later consented to the dismissal of those claims. D.E. No. 14, at 5–6; D.E. No. 22, at 16.

under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims except the Estate's state law vicarious liability claim against the County. D.E. No. 10.

On February 1, 2022, the district court granted the motion in part and dismissed the federal claims with prejudice. D.E. No. 22. It determined that the paramedics were entitled to qualified immunity from the substantive due process claim because although the Estate "assert[s] the decisions and actions of the defendant paramedics at Mr. Beaz's home were inconsistent with 'industry standards,' the actions—or in-actions—of [the paramedics] as pled do not rise to the level of constitutionally infirm conduct." *Id.* at 11. In sum, the Estate failed to set forth sufficient facts to meet its burden to demonstrate that the paramedics' conduct was constitutionally arbitrary or conscience shocking. *Id.* at 12. The court acknowledged that Eleventh Circuit prece-dent dictates that officials in noncustodial contexts cannot violate a substantive due process right unless they acted with a purpose to cause harm. *Id.* at 13. The amended complaint's allegations that the paramedics acted with deliberate indifference did not clear this high bar because the facts they contained "do not indicate that the para-medics' actions could be more than incorrect, split-second decisions made during a response to an emergency medical alert, let alone actions stemming from a purpose to cause harm." *Ibid.* The district court then ruled that the Estate did not show that the paramedics' conduct violated a clearly established constitutional right. *Id.* at 13–15.

The district court also determined that the Estate failed to state a municipal lia-bility claim against Miami-Dade County. The amended complaint did not "offer any more detail other than the conclusory allegations that [the County] had a custom of

'failing to render aid.'" *Id.* at 7. And it did not "explain how the defendant paramedics' actions … constitute an area where the likelihood of constitutional violations is [so] highly predictable" that liability attaches for a single incident. *Id.* at 8–9. The claim, filled as it was with "labels and conclusions alone," could not survive a motion to dismiss. *Id.* at 8 (cleaned up).

The court remanded the remaining claims to state court pursuant to 28 U.S.C. § 1367(c)(3). *Id.* at 16. This is the Estate's appeal of the dismissal of the federal claims.

## III. Standards of Review

The Court reviews the dismissal of a complaint with prejudice for failure to state a claim *de novo*, accepting well-pleaded factual allegations as true and construing them in the light most favorable to the plaintiff. *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019) (en banc). It reviews a refusal to grant a plaintiff's request for leave to amend the complaint for an abuse of discretion. *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1275 (11th Cir. 2018).

## SUMMARY OF THE ARGUMENT

This should have been an action in state court between the Estate and the County involving a single claim for state-law vicarious liability based on the Estate's allegations that the paramedics acted with deliberate indifference during the response to the emergency call. Yet now, not one, but two federal courts have been mired in the claim long rejected by this Court that acting with deliberate indifference violates an individual's Fourteenth Amendment right to substantive due process. The district court was right to strip this obvious state tort case of its flimsy constitutional disguise.

1. The district court correctly granted the paramedics qualified immunity from the substantive due process claim. Twice in the last two years, this Court recognized that no case in the Supreme Court, this Circuit, or the Florida Supreme Court has held that deliberate indifference is a sufficient level of culpability to state a claim for a violation of substantive due process in a noncustodial context. And it made clear that an official's conduct is arbitrary and conscience shocking in a constitutional sense only when it stems from a purpose to cause harm.

The facts actually contained in the amended complaint amount to a theory that the paramedics acted with deliberate indifference. Not only is the Estate's pleading teeming with allegations that the paramedics essentially "did nothing," it also explicitly calls their conduct "deliberate indifference." It is impossible for the Estate to satisfy the governing culpability standard in the face of its numerous allegations disproving the notion that the paramedics intended to harm Beaz, and try as it might, it cannot create new favorable factual allegations on appeal.

The Estate actively ignores nearly all of this Court's substantive due process jurisprudence, which together dictates that the paramedics, as agents of the County, were under no constitutional duty to provide any emergency medical service to Beaz. The fact that they undertook to provide some service does not give rise to a constitutional duty to perform the particular service Beaz desired. And even if it could be argued that their conduct somehow heightened the peril Beaz faced, there is a distinction between situations where state actors actively place someone in danger and where they fail to help someone already exposed to risk. Because the paramedics did

not cause Beaz's condition, his situation falls squarely in the latter category, where no substantive due process claim can lie.

Given the level of culpability assigned to the paramedics' conduct by the pleading, they are entitled to qualified immunity. They are additionally entitled to the defense because a plaintiff cannot show that a defendant's actions violated a clearly established substantive due process right unless she plausibly alleges that the actions were taken for the purpose of causing harm, and the Estate did not do so.

2. The district court properly dismissed the municipal liability claim because the Estate does not sufficiently allege an unconstitutional custom or a failure to train. In numerous decisions affirming the dismissals of § 1983 claims, this Court has applied the principle that a plaintiff cannot manufacture a plausible assertion of an unconstitutional custom out of allegations about her idiosyncratic dealings with a municipality or its employees. The only facts the Estate alleges in support of its custom claim are facts about this specific incident. In an attempt to remedy this deficiency, it includes a host of "this is not the first time this has happened" allegations. But these come with no factual enhancement and must be disregarded as conclusory.

As for the failure to train claim, the amended complaint lacks any factual allegation that the County was aware of prior incidents in which constitutional rights were similarly violated. Moreover, the Estate fails to show that a need to train in this particular area was so obvious that liability attaches for one incident. That theory applies only where untrained employees face clear constitutional duties in recurrent situations, but a municipality has no affirmative constitutional duty to provide rescue services.

3. The district court did not abuse its discretion when it refused to grant the Estate leave to amend before dismissing the federal claims with prejudice. The Estate, which had amended its complaint once before, imbedded its request for leave to amend a second time at the end of its response in opposition to the motion to dismiss. Flouting the Federal Rules' instructions and this Court's caselaw, it did not set forth the substance of its proposed amendment or attach a copy.

Amendment would be futile in any event. A prerequisite to relief on a substantive due process claim is a supported allegation that the defendant intended to harm the plaintiff. This prerequisite is belied here by facts which support, at best, a claim that the paramedics acted with deliberate indifference.

There is no reason for the federal courts to expend any more effort dealing with these "constitutional" claims. This Court should affirm their dismissal.

## ARGUMENT

### I. The District Court Properly Dismissed the Substantive Due Process Claim because the Paramedics Are Entitled to Qualified Immunity.

The defense of qualified immunity "shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The "central idea" of qualified immunity "is this pragmatic one: officials can act without fear of harassing litigation only when they can reasonably anticipate—*before* they act or do not act—if their conduct will give rise to damage liability for them." *Maddox v. Stephens*, 727 F.3d

1109, 1120 (11th Cir. 2013). Courts putting the idea into effect have decided that "the 'breathing room' afforded by qualified immunity is generous; … 'it protects all but the plainly incompetent or those who knowingly violate the law.'" *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). If a defendant establishes her entitlement to qualified immunity, dismissal is proper. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).

An official invokes the defense by demonstrating that she was acting within the scope of her discretionary authority when the allegedly wrongful acts occurred. *T.R. ex rel. Brock v. Lamar Cty. Bd. of Educ.*, 25 F.4th 877, 882 (11th Cir. 2022). The Estate concedes that the paramedics "acted within the course and scope of their duties for which they were hired, trained, and supervised." D.E. No. 1-1, at 3–4; Initial Br. 13.

With the defense invoked, the burden shifts to the Estate to negate it by satisfying "the two-pronged qualified immunity standard: (1) the facts alleged in [the] complaint constitute a violation of [Beaz's] constitutional rights, and (2) the constitutional rights were 'clearly established' when the defendant[s] committed the act complained of." *Morris v. Town of Lexington*, 748 F.3d 1316, 1322 (11th Cir. 2014). This Court "can affirm a grant of qualified immunity by addressing either prong or both." *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021). The Estate, required to establish *both* prongs, cannot establish either one.

**A. The paramedics did not violate Beaz's substantive due process rights because the pleaded facts show that they acted with, at most, deliberate indifference, not a purpose to cause harm.**

"Substantive due process is a legal concept 'untethered from the text of the Constitution,' so 'the Supreme Court has been reluctant to expand' its scope." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1329 (11th Cir. 2020) (quoting *Echols v. Lawton*, 913 F.3d 1313, 1326 (11th Cir. 2019)). It "has been kept under tight reins, reserved for extraordinary circumstances," *Nix v. Franklin Cty. Sch. Dist.*, 311 F.3d 1373, 1379 (11th Cir. 2002), because the Due Process Clause does not "impos[e] liability whenever someone cloaked with state authority causes harm," *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). "Both this Court and the Supreme Court have said repeatedly that the Fourteenth Amendment is not a font of tort law that can be used, through section 1983, to convert state court claims into federal causes of action." *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cty.*, 610 F.3d 588, 598 (11th Cir. 2010) (cleaned up).

It is not a constitutional violation for a state actor to render incompetent medical assistance or fail to rescue someone in need. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). When a substantive due process claim, like the Estate's, is premised on an official's failure to rescue in a noncustodial setting, the "harm suffered will seldom, if ever, be cognizable." *White v. Lemacks*, 183 F.3d 1253, 1258 (11th Cir. 1999). The one exception to this general rule comes into play if a plaintiff demonstrates that the official's conduct was "arbitrary or conscience shock-ing in a constitutional sense." *Waldron v. Spicher*, 954 F.3d 1297, 1306 (11th Cir. 2020)

(cleaned up). "[T]his standard is to be narrowly interpreted and applied," *Doe v. Braddy*, 673 F.3d 1313, 1318 (11th Cir. 2012) (cleaned up), such that "only the most egregious official conduct" violates the Due Process Clause, *Lewis*, 523 U.S. at 846.

The amended complaint's facts do not fit that narrow standard. They allege that the paramedics acted with deliberate indifference, which this Court's cases hold does not state a violation of substantive due process.

### 1. Allegations that the paramedics acted with deliberate indifference do not state a violation of substantive due process.

It is illuminating to begin with a case where the Court *did* find a valid substantive due process claim, as it puts in stark relief how far the paramedics' alleged conduct is from a violation. *See Neal ex rel. Neal v. Fulton Cty. Bd. of Educ.*, 229 F.3d 1069 (11th Cir. 2000). During high school football practice, Royonte Griffin slapped 14-year-old Durante Neal in the face. Neal reported the incident to coach Tommy Ector who told him, "You need to learn how to handle your own business." Neal picked up a weight lock and put it in his bag. Griffin approached Neal again at the end of practice. Neal pulled the lock out of his bag, hit Griffin in the head with it, and put it back in the bag. The two began fighting. Ector didn't stop the fight but rather dumped out the contents of Neal's bag, shouting, "What did you hit him with? If you hit him with it, I am going to hit you with it." Then, in the presence of the principal, Ector struck Neal in the left eye with the lock, destroying it and knocking it out of its socket. *Id.* at 1071.

This Court held that Neal stated a viable substantive due process claim. Ector had "intentionally us[ed] an obviously excessive amount of force," which "truly reflect[ed]

the kind of egregious official abuse of force that would violate substantive due process protections." *Id.* at 1076. His conduct violated Neal's rights because it was "so brutal, demeaning, and harmful as literally to shock the conscience of the court." *Id.* at 1075 (cleaned up).

As compared to the brutal, intentional conduct displayed by the coach in *Neal*, "actions, if merely reckless or deliberately indifferent, [do] not rise to the level of culpability necessary to state a violation." *Waldron*, 954 F.3d at 1310. Indeed, the Court could not have been more unequivocal on the subject: "No case in the Supreme Court, or in this Circuit, [or in the Florida Supreme Court] has held that deliberate indifference is a sufficient level of culpability to state a claim of violation of substantive due process in a non-custodial context." *L.S.*, *supra*, 982 F.3d at 1331 (cleaned up) (quoting *Waldron*, 954 F.3d at 1310). Because the Estate's allegations amount to deliberate indifference, it fails to state a substantive due process violation.

*L.S.*—a decision the Estate continues to ignore in its brief, even though it is the most recent precedential decision on this issue—compels this conclusion. A group of students who survived the mass shooting at Marjory Stoneman Douglas High School in Parkland claimed that county and school officials violated their substantive due process rights by allowing a known potential shooter into the school, not putting the school on lockdown after hearing gunshots, and barring emergency responders from entering the school during the shooting. *Id.* at 1327–28. The students' theory of arbitrary or conscience shocking conduct was that the defendants acted with deliberate indifference. *Id.* at 1330. The Court expressed its "doubt that deliberate indifference

can ever be 'arbitrary' or 'conscience shocking' in a noncustodial setting." *Ibid*. It then held that under circumstances "[w]hen split-second judgments are required, an official's conduct will shock the conscience only when it stems from a 'purpose to cause harm.'" *Id*. at 1331 (quoting *Waldron*, 954 F.3d at 1307). Since the students failed to allege that any official acted with that purpose, their claim failed. *Ibid*.

The district court appropriately relied on *L.S.* to find that the Estate did not allege that any paramedic acted with that purpose, either. D.E. No. 22, at 13. The Estate asserts that "every second is critical to the lives and health of [County] citizens," D.E. No. 1-1, at 18, perhaps inadvertently underscoring how this case, too, "involves rapid judgments in … [an] unpredictable circumstance," *L.S.*, 982 F.3d at 1331. Paramedics responding to an emergency call, like police officers responding to a shooting, "must make decisions 'in haste, under pressure, and frequently without the luxury of a second chance." *Ibid*. (quoting *Lewis*, 523 U.S. at 853). Thus, for the Estate's substantive due process claim to survive, the amended complaint had to contain allegations that the paramedics acted with the purpose of causing harm to Beaz. It doesn't.

The sole theory the amended complaint raises of constitutionally arbitrary or conscience shocking conduct is that the paramedics acted with deliberate indifference. It sets forth allegations that the paramedics:

"stood over [Beaz] and watched doing absolutely nothing";

"provided no care whatsoever";

"did nothing and waited for Mr. Beaz to die, while they stood over him and watched";

"failed to take any lifesaving equipment into Mr. Beaz's home";

"did not attempt any form of resuscitation or transport"; and

"did not treat or transport Mr. Beaz, when they were with him for several minutes while he had a heart rate and an organized cardiac rhythm, well before he converted to asystole."

D.E. No. 1-1, at 12–13. It then actually calls the paramedics' conduct "deliberate indifference":

The failure of the paramedics to provide any meaningful medical care to Mr. Beaz manifests a reckless disregard and/or *deliberate indifference* to his serous [*sic*] medical needs in violation of his constitutional rights. But for the *deliberate indifference* and reckless disregard for his life and health, the death of Mr. Beaz could have been avoided in the ordinary course of events, if he had received prompt and proper medical attention.

*Id.* at 13–14 (emphases added).

None of these allegations can be viewed as describing intentional conduct meant to harm Beaz. In short, the paramedics "did not want [Beaz] dead, so [their] conduct was not intentional the way that word is used in constitutional law." *Archie v. City of Racine*, 847 F.2d 1211, 1218 (7th Cir. 1988) (en banc). Whatever "[i]ndefensible passivity and nonfeasance" the amended complaint's allegations may describe "do[es] not rise to the level of a constitutional violation." *Brown v. Pa. Dep't of Health Emer. Med. Servs. Training Inst.*, 318 F.3d 473, 479 (3d Cir. 2003) (cleaned up).

Despite the Estate's best efforts, it cannot turn nonfeasance into misfeasance, doing nothing into doing something, or inaction into action. There is no substantive due process violation where "[t]he most that can be said of" a public official "is that [she] stood by and did nothing when suspicious circumstances dictated a more active role for [her]." *DeShaney*, *supra*, 489 U.S. at 203. This holds true even when the official

is a paramedic whose conduct may have violated an industry standard or department protocol (an allegation the Estate belabors). *See Anderson v. City of Minneapolis*, 934 F.3d 876, 884 (8th Cir. 2019) ("[T]here is no reason to think that medical guidelines for first responders enshrine duties arising out of the Fourteenth Amendment. That the medical guidelines were not followed here could possibly be the basis for a negligence suit, but it is not the basis for a constitutional one."). The paramedics' conduct, according to the Estate's facts, "is essentially inaction" and, as such, "was remote from the concerns of the framers of the Fourteenth Amendment." *Bradberry v. Pinellas County*, 789 F.2d 1513, 1517 (11th Cir. 1986) (cleaned up).

Deliberate indifference is the most severe level of culpability the Estate could plausibly demonstrate because the amended complaint, like the students' complaint in *L.S.*, "is replete with allegations that disprove the notion that the [paramedics] intended to harm [Beaz]." 982 F.3d at 1332. The students alleged that before the shooter entered the school an officer drove toward him and alerted others to his presence. *Ibid.* The Estate alleges that the paramedics took some initial action, as well: they drove to his home; on arrival, one began "pulling lifesaving equipment out of the vehicle along with a stretcher in order to transport Mr. Beaz"; and they "enter[ed] the home with an EKG machine" that they attached to him, which "instantly printed a reading." D.E. No. 1-1, at 12–13. The students also alleged that two officers "behaved as they did because they were so poorly trained that they were incapable of adequately conducting the tasks which they were assigned." *L.S.*, 982 F.3d at 1332–33 (cleaned up). The Estate similarly characterizes the paramedics' behavior at least four times:

> "[A]ny properly trained and reasonable paramedic" would know "the rhythm Mr. Beaz was in was not asystole."

> "Only an untrained and unsupervised EMT/paramedic could mistake a rhythm of bradycardia or PEA for asystole."

> "A properly trained paramedic knows that a body does not become cold to the touch for a few *hours*."

> "Had the [County] properly trained, supervised, and admonished its employees, Mr. Beaz's death would not have occurred."

D.E. No. 1-1, at 10–12, 14. These allegations show that the paramedics assessed Beaz's condition at least to some extent. The EKG reading the Estate cites throughout its pleading and brief wouldn't exist if they hadn't. Because the paramedics did assess Beaz, then "no matter how incompetently" they did, "they did not act with the requisite malice." *L.S.*, 982 F.3d at 1333.

The Estate criticizes the paramedics for acting too slowly and not doing more, but *L.S.*'s holding turned on the defendants' mental state, not on the quality or quantity of activity they engaged in. "Absent intentional wrongdoing," a court "cannot review" the paramedics' "split-second decisions under the Due Process Clause." *Id.* at 1331; *see also Slaughter v. Mayor of Baltimore*, 682 F.3d 317, 323 (4th Cir. 2012) (affirming dismissal of substantive due process claim arising from firefighter recruit who died during training exercise because complaint failed to allege facts to support claim that fire department "*intended to harm* the new recruits"). Intentional wrongdoing is indeed absent here. The district court properly determined that "the facts alleged in this case do not indicate the paramedics' actions could be more than incorrect, split-second decisions made during a response to an emergency medical alert, let alone

actions stemming from a purpose to cause harm." D.E. No. 22, at 13. This Court should refuse to review the paramedics' decisions under the Due Process Clause.

⁂

Now that the district court has instructed the Estate that the law governing substantive due process claims requires that an official act with a purpose to cause harm, the Estate makes a last-ditch attempt to clear that hurdle by including statements in its brief that find no factual support in the pleading. It claims that the paramedics "would find [Beaz] alive but decide not to treat him so that they could return back to the station to sleep," that they "hope[d] that the EKG transmitted to the PCR would show as a flat-line only," that they "acted in such a callous manner to ensure his death," and that they "act[ed] with a purpose to harm in this scenario, by refusing aid to a person they knew to be alive." Initial Br. 2, 26, 32, 35.

"It's well-settled," however, "that a plaintiff may not amend her complaint through argument in a brief …, and on appeal this Court cannot allow [a] plaintiff to argue a different case from the case she presented to the district court." *Matamoros v. Broward Sheriff's Office*, 2 F.4th 1329, 1336 n.6 (11th Cir. 2021) (cleaned up). Make no mistake, the Estate intended from the start for its substantive due process claim to be based on deliberate indifference, not on a purpose to cause harm. The Court need look no further than the text of the amended complaint. In the allegations supporting the federal claims, "deliberate indifference" appears sixteen times and "reckless disregard" appears six, while "intent," "intentional," "purpose," and "purposeful" don't appear at all. *See generally* D.E. No. 1-1, at 1–24. None of the alleged facts could prove

17

the paramedics intended to harm Beaz. The Estate can't manufacture favorable facts on appeal.

### 2. The paramedics had no constitutional duty to provide rescue services to Beaz, who was already exposed to a risk that they did not create.

*L.S.* should be the beginning and the end of the substantive due process analysis. That being said, the paramedics address the Estate's flawed contention on appeal that they violated Beaz's constitutional rights "by not timely rendering emergency aid when they were under a duty to do so." Initial Br. 34. Municipalities, and by extension their agents, are "under no affirmative constitutional duty to provide any particular type of medical services to" anyone. *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1036 (11th Cir. 1987). Relatedly, this Court has declined to take the "extreme step" of "read[ing] into the Constitution the tort law principle that a rescue, once begun, must be carried out with due care." *Bradberry*, *supra*, 789 F.2d at 1518.

Both *Wideman* and *Bradberry* are instructive, as they undermine the Estate's "duty" rationale. First up is *Wideman*. Toni Wideman, who was four months pregnant, began experiencing abdominal pain. Her obstetrician instructed her to go to Piedmont Hospital. Wideman told the DeKalb County paramedics who responded to her 911 call to take her there, but because county policy mandated that paramedics drive patients only to hospitals that guaranteed payment of the county's emergency bills, they took her to Shallowford Hospital instead. She was later transferred to Piedmont, but by then her obstetrician could not stop her labor, and she gave birth to a premature baby who died hours later. *Wideman*, 826 F.2d at 1031.

Affirming the dismissal of Wideman's substantive due process claim, this Court rejected several arguments that mirror those the Estate raises. It first concluded that the county had no constitutional duty to provide Wideman the medical treatment she alleged was necessary. Although her physical condition "might have required her to seek immediate medical help, and that need might have induced her to make use of the service provided by the County," her physical condition could not be attributed to the County. *Id.* at 1036. "Clearly, the County did not cause the emergency [she] faced. Neither did her condition arise while she was in the County's custody or control. Therefore, the county was under no affirmative constitutional duty to provide any particular type of emergency medical service to her." *Ibid.* The same goes here. Beaz's physical condition cannot be attributed to the paramedics. They did not cause the emergency which required him to seek medical help and induced him to make use of Miami-Dade County's fire rescue services. Nor did his condition arise while he was in the paramedics' custody or control. The paramedics therefore had no affirmative constitutional duty to provide any emergency medical service to Beaz.

*Wideman* then rejected the contention that "the fact that [DeKalb] County undertook to provide *some* ambulance service" gave rise to "a constitutional duty to perform the particular service desired by this plaintiff." *Ibid.* "[S]uch a position 'would open the way for scrutiny by the federal courts of virtually every municipal decision to reallocate protective resources,'" which neither the Fourteenth Amendment nor § 1983 were meant to do. *Ibid.* (quoting *Jackson v. Byrne*, 738 F.2d 1443, 1447 (7th Cir. 1984)).

The Estate raises the similar contention that the paramedics violated Beaz's substantive due process rights by not driving quickly enough to his home while they were "under a duty to do so." Initial Br. 34. Under *Wideman*, that contention founders.

Lastly, the Court explained that "[e]ven if it could be argued that the County's conduct somehow heightened the peril Ms. Wideman faced, [she] still would not state a constitutional claim" because there is a distinction "'between situations where the state actively places someone in danger and where the state fails to help someone already exposed to risk.'" *Wideman*, 826 F.2d at 1037 (quoting *Bradberry*, 789 F.2d at 1517). While there may be constitutional liability in cases falling into the former category, there is certainly none in those falling into the latter. The facts of Wideman's case put her claim squarely in the latter category. The facts of this case put Beaz's claim squarely in the latter category, as well. He was already exposed to medical risk, so even if the paramedics' conduct somehow heightened the peril he faced, the Estate would still not state a constitutional claim.

*Bradberry* first explored the distinction that the Court applied in *Wideman*. A Pinellas County lifeguard saw Kenny Ray Thomas swimming toward a sandbar in a non-designated swimming area off a county beach and directed him to the shore. While swimming back, Kenny drowned. Kenny's mother alleged that the county violated Kenny's substantive due process rights by inadequately training the lifeguard. *Bradberry*, 789 F.2d at 1514. The Court adopted the distinction between the two categories of situations involving risk, in part because it was "consistent with the well established notion that the Constitution limits the actions the states can take rather

than mandating specified obligations." *Id.* at 1517. It then held that Kenny's case fell in the latter category. Stated plainly, "[t]he state did not kill Kenny Ray Thomas, the ocean did." *Id.* at 1518. He "was imperiled by his voluntary act and an agent of the county attempted, albeit unsuccessfully, to save him from that risk," but "[t]he Constitution, as opposed to local tort law, does not prohibit grossly negligent rescue attempts nor even the grossly negligent training of state officers." *Id.* at 1517.

The paramedics did not kill Beaz; his medical condition did. The paramedics "did not cause [his] diseases," "take him into custody," or, most importantly, "hinder [him] from seeking other sources of aid; [he] could have called a private ambulance or asked … one of [his] relatives (who lived nearby) to take [him] to the local hospital." *Archie*, *supra*, 847 F.2d at 1223. Indeed, the Estate *admits* that Beaz could have "called his paramedic son-in-law and daughter who lived just half a mile (0.5 mi) away." D.E. No. 1-1, at 21; Initial Br. 32. The paramedics "therefore did not violate [his] rights under the Due Process Clause." *Archie*, 847 F.2d at 1223; *see also id.* at 1226 (Posner, J., concurring) ("[M]erely increasing the probability of death by the uncertain amount involved in this as in most failure-to-rescue cases does not rise to the level of depriving the victim of his life … in the constitutional sense[.]").

Due process is not implicated "when the state fails to help someone" like Beaz who was "already in danger." *Bradberry*, 789 F.2d at 1517–18. This Court should once again decline to take the "extreme step" of "read[ing] into the Constitution the tort law principle that a rescue, once begun, must be carried out with due care." *Id.* at 1518.

It should not be lost on the Court that neither *Wideman* nor *Bradberry* stands for the proposition that a public official must never be subject to liability in any court under any circumstances. Far from it. While both decisions rejected their respective plaintiffs' constitutional claims, they simultaneously acknowledged the possibility of claims for violations of *state* law.[2] So did the district court. *See* D.E. No. 22, at 11 n.7 (observing that "Defendants' actions may support a negligence claim"). For its part, Miami-Dade County has never disputed that the Estate may have a viable state law claim; its motion sought to dismiss all claims *except* the vicarious liability claim asserted against it. D.E. No. 10, at 1, 20. But the claim before the Court now "is based on the Due Process Clause of the Fourteenth Amendment, which, as [the Supreme Court has] said many times, does not transform every tort committed by a state actor into a constitutional violation." *DeShaney*, *supra*, 489 U.S. at 202.

*Wideman* and *Bradberry*, like *L.S.*, do not appear in the Estate's brief. That's no earth-shattering revelation, since it is impossible for the Estate to reconcile their holdings with the arguments it raises. Precedent mandates that facts demonstrating that an official acted with deliberate indifference are not enough to state a constitutional claim

---

[2]  *See Wideman*, 826 F.2d at 1037 ("Wideman suffered no constitutional deprivation in this case. It is entirely possible that she may have meritorious state law claims against the County or its employees …. Remedy for such injuries, however, must be sought in state court under traditional tort-law principles."); *Bradberry*, 789 F.2d at 1518 ("[E]ven if the lifeguard's attempted rescue of Kenny Ray Thomas heightened the peril he faced, such conduct, which may amount a tort cognizable under *state* law, does not constitute a *constitutional* deprivation of life without due process[.]").

for a violation of substantive due process. Because those are the only facts the Estate offers, it fails to plausibly allege that the paramedics violated Beaz's constitutional rights and thus fails to overcome their entitlement to qualified immunity.

**B.   The Estate has not shown that the paramedics' conduct violated clearly established law.**

Even if the Court disagreed that the Estate's allegations of deliberate indifference do not state a substantive due process violation, it should affirm qualified immunity based on the secondary conclusion that the Estate fails to show that the paramedics' conduct violated clearly established law. "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014). In this Circuit, "a right can be clearly established in one of three ways": the plaintiff "must point to either (1) 'case law with indistinguishable facts,' (2) 'a broad statement of principle within the Constitution, statute, or case law,' or (3) 'conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Crocker*, *supra*, 995 F.3d at 1240 (quoting *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009)). "In all three methods, the 'salient question is whether the state of the law at the time of the incident gave the [official] fair warning that his conduct was unlawful.'" *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022) (cleaned up) (quoting *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016)), *petition for cert. filed*, No. 21-1559 (U.S. June 14, 2022). The Estate does not satisfy its burden under any method.

1.  The first method is out. It requires identifying a case where an official acting under similar circumstances as the defendant was held to have violated the same constitutional right. *White v. Pauly*, 137 S. Ct. 548, 552 (2017). The Estate cannot come up with a binding case showing that it was clearly established in April 2019 that a paramedic can violate an individual's substantive due process rights in a non-custodial setting through deliberate indifference. For starters, the defendants have been unable to locate any case in this Court, the Supreme Court, or the Florida Supreme Court holding a paramedic liable for a violation of an individual's substantive due process rights. *See Powell*, 25 F.4th at 920 (only "a materially similar decision of the Supreme Court, of this Court, or of the supreme court of the state in which the case arose" can clearly establish the law under the first method).

That aside, eleven months after this incident, this Court observed that no case *at all* "in the Supreme Court, or in this Circuit, or in the Florida Supreme Court," let alone one involving a paramedic, "has held that recklessness or deliberate indifference is a sufficient level of culpability to state a claim of violation of substantive due process rights in a non-custodial context." *Waldron*, *supra*, 954 F.3d at 1310. To that observation, it added the conclusion that "the only way [a plaintiff] can prove a *clearly established* violation of substantive due process [is] to prove that [the defendant]'s actions were for the purpose of causing harm." *Id*. at 1311 n.7.

None of the Estate's cited cases undermine *Waldron*. In fact, every decision it points to, *see* Initial Br. 30–35, falls into one of the four categories of decisions this Court has already said do not clearly establish the law: (1) "precedents that are inapposite,"

such as those that arise from custodial contexts or those that do not involve paramedics; (2) decisions that "are not precedential," like district court opinions; (3) decisions that come "from other jurisdictions"; and (4) decisions that "postdate [the] alleged violation." *Echols*, *supra*, 913 F.3d at 1324.[3]

2. The second method is also out. Under this method, as under the first, "the plaintiff must rely on decisional law"; while in the first method, courts "'look at precedent that is tied to the facts,'" in the second method they "look for 'broad statements of principle *in case law* that are not tied to particularized facts.'" *Powell*, 25 F.4th at 920 (emphasis added) (cleaned up) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002)). This Court, for example, has often invoked the broad statement of principle that "a police officer violates the Fourth Amendment … if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands" and applied it under the second method to deny qualified immunity. *Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014) (citing cases).

The Estate offers the same statement for methods two and three: "It should be so obvious to a paramedic—whose sole purpose is to quickly respond to a medical emergency and offer aid—that refusing to provide aid to someone that he/she knew was alive, simply so that he/she could return back to sleep sooner, would constitute a violation of a person's constitutional rights, making prior case law unnecessary." Initial

---

[3]  "While it is true that only binding precedent can clearly establish a right for qualified immunity purposes, non-binding persuasive authority can be used to indicate that a particular constitutional right is *not* clearly established." *Corbitt*, *supra*, 929 F.3d at 1319 n.14 (emphasis added) (cleaned up).

Br. 31. It, however, cites no decisional law from which it drew this principle. *See Bradley v. Benton*, 10 F.4th 1232, 1242 (11th Cir. 2021) ("To control a novel factual situation, a broad principle must be established with obvious clarity *by the case law* …." (emphasis added) (cleaned up)). In addition, it fails to show how the principle would apply with obvious clarity to these circumstances. Where "a plaintiff relies on a general rule, it must be obvious that the general rule applies to the specific situation in question." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010). The rule would not obviously apply to this specific situation because this is not a situation where paramedics "refused" to treat someone. The amended complaint contains no facts to support the claim that the paramedics "refused" to treat Beaz. It does state that they "fail[ed] or refuse[d] to explain why they did not treat or transport Mr. Beaz," D.E. No. 1-1, at 11–12, but it should go without saying that refusing to *explain* why they did not treat him is not the same as refusing to *treat* him. Apart from that, the allegations paint the paramedics as untrained and unsupervised, *id.* at 10–12, 14, not as those who "intentionally den[ied] emergency aid to someone they believed to be alive." *Anderson*, *supra*, 934 F.3d at 883. If the paramedics "performed their duties poorly" because they were as poorly trained as the Estate asserts, then "they made an error in judgment of the sort that qualified immunity protects." *Ibid.* (granting qualified immunity to fire department employees who checked vitals of hypothermia victim and, plaintiff alleged, prematurely declared him dead, which meant that paramedics, police officers, and medical examiner did not conduct their own hypothermia assessments).

3.  The third option is a nonstarter. *Waldron*, which was part of the legal landscape at the time the Estate filed suit, held that "the only way" a plaintiff could prove "a *clearly established* violation of substantive due process would be to prove that [the defendant]'s actions were for the purpose of causing harm." 954 F.3d at 1311 n.7; *see also id.* at 1312 ("[I]t is a matter of obvious clarity that, if … [defendant] intended to cause harm to [plaintiff's decedent] in the form of death or serious brain injury, … then we hold that [plaintiff] would have proved a violation of clearly established substantive due process rights."). Despite *Waldron*'s unequivocal holdings, the Estate chose to allege throughout its pleading that the paramedics acted with deliberate indifference and chose not to include any facts to support a claim that the paramedics acted intentionally to harm Beaz. There can be no "obvious" violation here.

The Court should affirm the district court's grant of qualified immunity.

## II.  The District Court Properly Dismissed the Municipal Liability Claim.

If the Court concludes that the Estate has not stated a claim against the paramedics for a violation of a constitutional right, then it may affirm the dismissal of the municipal liability claim outright, for "[t]here can be no policy-based liability … when there is no underlying constitutional violation." *Knight ex rel. Kerr v. Miami-Dade County*, 856 F.3d 795, 821 (11th Cir. 2017). Even if qualified immunity is denied, the Estate nevertheless fails to state a claim against Miami-Dade County.

### A.  The Estate cannot state a claim based on custom by alleging facts about only this incident.

A municipality "cannot be subject to liability *at all* unless the harm was caused

in the implementation of 'official municipal policy.'" *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1951 (2018) (emphasis added) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Miami-Dade County's liability must therefore "be premised on a constitutional violation carried out by the County itself and cannot be based on theories of *respondeat superior* or vicarious liability." *Knight*, 856 F.3d at 819. To establish the County's liability on a *Monell* claim, the Estate has two options: (1) identify an officially promulgated municipal policy, or (2) identify an unofficial custom or practice shown through the repeated acts of a final policymaker for the municipality. *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

The Estate concedes that it is proceeding under a custom theory, but it fails to state a claim because the only well-pleaded facts in the amended complaint concern this specific incident. "[A] single incident of unconstitutional activity is insufficient to prove a policy or custom even when the incident involves several employees of the municipality." *Craig v. Floyd County*, 643 F.3d 1306, 1311 (11th Cir. 2011). A plaintiff does not plausibly state a custom by alleging, basically, '*x* unconstitutional thing happened to me, so the municipality must have a custom of permitting *x* unconstitutional thing.' *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1330 (11th Cir. 2015). In *Weiland*, the plaintiff alleged that a sheriff's office had "a policy of using internal affairs investigations to cover up the use of excessive force against the mentally ill." *Ibid.* This Court affirmed the dismissal of his *Monell* claim because the only facts he offered to support those allegations were facts recounting his own experience with an internal affairs investigation into his own excessive force complaint. *Ibid.*

The fate of the Estate's claim should be no different from the fate of the claims in *Weiland* and the myriad other cases where a plaintiff tried to bootstrap an individualized incident into a custom.[4] The district court aptly recognized that while the Estate *claimed* that the County "maintained customs of failing to monitor employee compliance with the law, required response times, medical protocols, and procedures, and that there was a custom of employees committing constitutional violations, falsifying arrival times, and failing to provide meaningful medical services," the reality is that it "neglect[ed] to support such blanket assertions with citation to any facts or incidents other than the unfortunate events involving Mr. Beaz." D.E. No. 22, at 7–8.

Even a cursory look at the amended complaint reveals that the Estate only ever alleges facts about this incident. It claims that the County "permitted, fostered, and maintained" a laundry list of "unofficial policies, practices, and/or customs." D.E. No. 1-1, at 17–18. Yet according to the facts pled, the only time the County, for instance, "permit[ted], condon[ed], ratif[ied], and/or turn[ed] a blind eye toward the conduct of its paramedics and employees" was when it did so toward the conduct of the para-

---

[4]  *See, e.g.*, *Diaz v. Miami-Dade County*, 849 F. App'x 787, 792 (11th Cir. 2021) (plaintiff's complaint was "based on his sole incident of arrest, which is not sufficient to satisfy the 'custom or policy' prong necessary to impose § 1983 liability on the County"); *Rankin v. Bd. of Regents*, 732 F. App'x 779, 783 (11th Cir. 2018) ("to the extent some [allegations] are based on facts, they are limited to [plaintiff's] own experience and as a result do not suggest a policy or custom"); *Gurrera v. Palm Beach Cty. Sheriff's Office*, 657 F. App'x 886, 893 (11th Cir. 2016) ("Plaintiff fails to identify any examples beyond his own arrest of widespread unconstitutional conduct."); *Marantes v. Miami-Dade County*, 649 F. App'x 665, 673 (11th Cir. 2016) (plaintiff "pointed to only one incident … to show that the internal affairs process was ineffectual by custom—his own experience"); *Grider v. Cook*, 590 F. App'x 876, 882 (11th Cir. 2014) (allegations "involved only [plaintiff] himself").

medics in this case.[5] The only incident report containing "false and misleading information" that the County "allowed … to be used as the basis for covering up the inadequacies of its employees" was the incident report about this call that the County used to cover up the inadequacies of these paramedics.[6] The only citizen complaint that the County "inadequately and improperly investigated" was the citizen complaint about this incident.[7] The only employees the County "tolerate[d] a chronic pattern of misconduct" from "with no significant effort to properly supervise, monitor, discipline or terminate" were the paramedics.[8] And so on. The amended complaint is just as deficient as the pleading in *Weiland*.

The Estate tries to obfuscate by offering up several 'this is not the first time this has happened' allegations and claiming that they establish a custom. It asserts based only "upon information and belief" that "this is not the first time that the [County]'s employees incorrectly determine[d] that a citizen is 'dead on arrival' nor is it the first

---

[5]   D.E. No. 1-1, at 9 ("[T]he falsification of the en route and arrival time is not the most egregious act committed by the paramedics, who were emboldened by the practices and customs that were created by the [County] and reaffirmed by its willful blindness and deliberate indifference."); *id.* at 17 ("The [County] exhibited willful blindness to its employees' failures (including the paramedics) to follow [County] policies and procedures in violation of industry standards[.]").

[6]   D.E. No. 1-1, at 5 ("[I]t is customary for [County] employees to falsify their response times, as they did in this case[.]").

[7]   D.E. No. 1-1, at 14 ("In this particular case, an investigation was performed only after a complaint was made on behalf of Mr. Beaz's surviving children … [and] was not conducted until several months after the complaint was made.").

[8]   D.E. No. 1-1, at 15 ("The purported consequences (or lack thereof) resulting from the investigation further corroborate this mentality and environment that the [County] has created, fostered, and condoned. Specifically, there were no repercussions for the paramedics' actions which are commensurate with the egregiousness of their acts and omissions ….").

time that the [County]'s employees falsif[ied] response times." D.E. No. 1-1, at 16. It additionally claims that "[t]his is not the first time that [County] employees either falsify response times or simply fail to comply with policies and procedures requiring emergent response and care to the [County]'s citizens" and "[t]his is not the first time that the [County]'s employees, including but not limited to the paramedics, improperly fail to render care and/or assess a citizen as 'dead on arrival,' when in actuality they are required to provide care and transport." *Id.* at 8, 14.

Allegations like these don't cut it. *Sosa v. Martin County*, 13 F.4th 1254 (11th Cir. 2021), *vacated on grant of reh'g en banc*, 21 F.4th 1362 (11th Cir. 2022).[9] Sheriff's deputies mistakenly arrested David Sosa twice, four years apart, on a decades-old Texas warrant for a different David Sosa. Sosa filed a lawsuit that included a § 1983 municipal liability claim. Affirming the dismissal of that claim, a panel of this Court held that "Sosa did not allege enough facts to show that the Sheriff's Department had a pattern of rearresting the wrong person on a warrant because of mistaken identity based on the arrestee's name." *Id.* at 1278. Sosa had alleged that "upon information and belief Martin County has arrested many innocent individuals because they failed to exclude

---

[9] Although the panel opinion in *Sosa* was vacated, its *Monell* discussion remains persuasive. En banc rehearing is focused on Sosa's overdetention claim—the only claim that divided the panel. *See Sosa*, 13 F.4th at 1279 (majority op.) ("We affirm the district court's dismissal of Sosa's Fourth Amendment and *Monell* claims ...."); *ibid.* (Luck, J., concurring in part and dissenting in part) ("I agree we should affirm the dismissal of Sosa's false arrest and *Monell* claims."); *accord* Memorandum to Counsel, *Sosa v. Martin County*, No. 20-12781 (Jan. 7, 2022) ("[T]he court desires for counsel to focus their briefs on the following issues: Did David Sosa plausibly allege an overdetention in violation of his Fourteenth Amendment substantive due process rights? Assuming he did, was the violation clearly established in April 2018?").

a person based upon different identifying information between the detainee and the actual person arrested for a warrant." *Id.* at 1278–79. The panel acknowledged that "facts based 'upon information and belief' may support a claim when facts are not within the knowledge of the plaintiff but he has sufficient data to justify an allegation on the matter." *Id.* at 1279 (cleaned up). It ruled, however, that "Sosa point[ed] to no data other than his own rearrest … to support his information-and-belief allegation," so he "did not plead enough facts to set forth a *Monell* practice claim." *Ibid.*

The Estate likewise points to no data other than this incident. It attempted to remedy that defect by inserting the vague allegation into its response to the motion to dismiss that the County prevented it from gathering the relevant data by "fail[ing] to comply with a public records request that was made to lock in additional detail on the prior instances alleged." D.E. No. 14, at 14. It inserts the same allegation in its brief. Initial Br. 40. Where it did *not* insert the allegation, though, is in the amended complaint, and a plaintiff cannot amend its complaint through a response to a motion to dismiss, *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015), or an argument in a brief, *Matamoros*, *supra*, 2 F.4th at 1336 n.6.

Without the requisite factual support, the Estate's 'this is not the first time' allegations cannot keep the liability claim afloat. The amended complaint "do[es] not suffice to establish that the County itself—not its officers, not one section of a department—caused a constitutional violation by way of an unofficial custom or practice shown through the repeated acts of a final policymaker for the County.' *Diaz v. Miami-Dade County*, 424 F. Supp. 3d 1345, 1362 (S.D. Fla. 2019) (cleaned up), *aff'd*, 849 F.

App'x 787 (11th Cir. 2021). There is no viable *Monell* claim based on custom.

**B. The Estate cannot state a claim based on failure to train because the County did not have notice of need to train its employees in this particular area.**

The district court also properly dismissed the Estate's theory of municipal liability alleging a failure to train. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipalities may be held liable for failing to train their employees "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "Deliberate indifference is a stringent standard of fault," *Connick*, 563 U.S. at 62 (cleaned up), which requires a plaintiff to set forth allegations that demonstrate the municipality "knew of a need to train and/or supervise its employees in a particular area and … made a deliberate choice not to take any action," *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

The Estate cannot prevail on a failure to train claim because it fails to allege facts that show the County was aware of prior incidents in which constitutional rights were similarly violated. A "pattern of similar constitutional violations by untrained employees is ordinarily necessary." *Connick*, 563 U.S. at 62 (cleaned up). By way of example, the plaintiff in *Weiland* sought to support a failure to train claim with the allegation that "numerous police shootings of people with mental illnesses" in Palm Beach County put the sheriff's office on notice of a need for specialized training. 792 F.3d at 1329 n.21. The Court ruled that the allegation was "not enough" because the plaintiff had

to "allege, with some 'factual enhancement,' that those shootings gave rise to 'similar constitutional violations.'" *Ibid.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007), then *Connick*, 563 U.S. at 62).

The County already addressed in its custom discussion the Estate's failure to allege any facts of prior similar constitutional violations. The amended complaint does not contain a single fact about one emergency paramedic response other than the response in this case, much less any that involved similar constitutional violations.

Contrary to the Estate's contention, a court that requires factual enhancement in the form of allegations about prior incidents that gave rise to similar constitutional violations is not employing a "heightened pleading standard." Initial Br. 40, 42 n.10. It is settled that, for purposes of a *Monell* claim, "contemporaneous … conduct cannot establish a pattern of violations that would provide notice to [a municipality] and the opportunity to conform to constitutional dictates." *Connick*, 563 U.S. at 63 n.7 (cleaned up); *see also Knight*, *supra*, 856 F.3d at 820 (plaintiff cannot show a pattern when its only allegation "suggesting a pattern of tortious conduct is th[e] case itself"). Because contemporaneous conduct cannot establish a pattern of violations, then the facts of the case before a court cannot factor into the determination whether a plaintiff has plausibly stated that a pattern exists. And if the facts of *this* incident cannot be considered in determining whether the Estate has plausibly stated that a pattern exists, then the only way its claim can have "facial plausibility" is if it pleads "*factual content that allows the court to draw the reasonable inference that the [County] is liable for the misconduct alleged.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added).

The amended complaint contains no factual content, but rather "naked assertions devoid of further factual enhancement," *ibid.* (cleaned up), that the County "permitted, fostered, and maintained" the above-mentioned list of "unofficial policies, practices, and/or customs." D.E. No. 1-1, at 17–18; *see supra*, at 29–30. Without factual content that establishes a pattern of previous violations, a *Monell* claim—whether based on a failure to train or a custom—"stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (cleaned up). A court does not run afoul of the federal pleading rules if it requires those facts, and it is authorized to dismiss any claim that doesn't provide them, including this one.

⁂

The alternative voyage the Estate sets out on in search of a viable failure-to-train claim fares no better. It invokes the notion that a need to train and supervise in a particular area can be "so obvious … that liability attaches for [a] single incident." *Gold*, 151 F.3d at 1352. But this standard applies where untrained employees "face clear constitutional duties in recurrent situations," such as in the case of a municipality knowing that its armed officers will be required to arrest fleeing felons and must be trained on the use of deadly force. *Young v. City of Augusta ex rel. DeVaney*, 59 F.3d 1160, 1172 (11th Cir. 1995).

The Estate's claim falls outside the ambit of this theory. Municipalities may have a duty to ensure their police officers do not use excessive force, but they are under no comparable duty "to provide any particular type of medical services" to anyone.

35

*Wideman*, *supra*, 826 F.2d at 1037.[10] The County's paramedics therefore face no clear constitutional duties in recurrent situations that would give rise to an obvious need for training, and the County cannot be held liable for a failure to train.

Dismissal of the municipal liability claim was proper.

### III. The District Court Did Not Abuse Its Discretion by Refusing to Grant the Estate's Requests for Leave to Amend, which Appeared in the Conclusion of Its Response to the Motion to Dismiss.

Finally, the district court was right to dismiss the federal claims without giving the Estate an opportunity to amend. The Estate amended its complaint once already, prior to removal. D.E. No. 1, at 1. In the conclusion of its memorandum opposing the motion to dismiss, the Estate requested leave to amend the complaint a second time "to the extent that the Court may be inclined to grant said Motion." D.E. No. 14, at 21; *see also id.* n.3 ("[T]he Plaintiffs respectfully request that … they be given the opportunity to amend the complaint."). These requests "possessed no legal effect," *Newton*, *supra*, 895 F.3d at 1277, and neither the district court nor this Court have any obligation to honor them.

The Federal Rules of Civil Procedure require that a request for court order be made by written motion that states with particularity the grounds for seeking the order

---

[10] *See also, e.g.*, *Dodd v. Jones*, 623 F.3d 563, 568 (8th Cir. 2010) ("[T]he Constitution imposes no obligation on the state to provide perfect or even competent rescue services."); *Brown*, *supra*, 318 F.3d at 478 ("[T]here is no federal constitutional right to rescue services, competent or otherwise."); *Bradberry*, *supra*, 789 F.2d at 1517 ("If the defendants deprived the plaintiffs' decedent[] of anything it was of some right to competent rescue services. But, as we have been at pains to stress, there is no such right in the Fourteenth Amendment." (cleaned up)).

and states the relief sought. Fed. R. Civ. P. 7(b)(1). When the relief sought is leave to amend the complaint, "the plaintiff must set forth the substance of the proposed amendment or attach a copy of the proposed amendment to its motion." *Newton*, 895 F.3d at 1277 (cleaned up). The Estate did not do either.

This Court "has clearly held that '[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.'" *Cita Trust Co. v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (quoting *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)). In *Cita Trust Co.*, the Court rejected a plaintiff's challenge to a denial of leave to amend because "[a]ll [it] did was, in the conclusion of its response to [the] motion to dismiss the complaint, alternatively request dismissal without prejudice so that it *could amend* the complaint." *Ibid.* The Estate's requests to amend were just as improperly raised.

Amendment would be futile, anyway. A court "may find futility" and rightfully deny leave "if a prerequisite to relief is belied by the facts alleged in the complaint." *L.S.*, *supra*, 982 F.3d at 1332 (cleaned up). The Court in *L.S.* refused to allow the students to amend their complaint to state a substantive due process claim because their complaint was "replete with allegations that disprove the notion that the officials intended to harm them." *Ibid.* The rationale applies with equal force here. The Estate cannot state a substantive due process claim unless it "allege[s] that the defendants acted with the purpose of harming" Beaz, and the facts it has already alleged "preclude the possibility of a violation" because they support, at best, a claim that the paramedics acted with deliberate indifference. *Id.* at 1332–33. It has thus "failed to establish that

amending its complaint would not be futile, and so [it] would lose regardless." *Cita Trust Co.*, 897 F.3d at 1157. The district court did not abuse its discretion by declining to grant leave to amend.

## CONCLUSION

This case has been "yet another attempt to litigate a state law tort claim in federal court under the guise of a suit brought pursuant to … 42 U.S.C. § 1983." *Bradberry*, *supra*, 789 F.2d at 1514. The constitutional charade has gone on long enough. The Court should affirm the dismissal of the federal claims.

Dated: July 22, 2022.

Respectfully submitted,

GERALDINE BONZON KEENAN
MIAMI-DADE COUNTY ATTORNEY

By: */s/ Zach Vosseler*
Zach Vosseler
Assistant County Attorney
Fla. Bar No. 1008856
Stephen P. Clark Center
111 N.W. First Street, Suite 2810
Miami, Florida 33128
(305) 375-5151
zach@miamidade.gov

*Counsel for Appellees*

# CERTIFICATES OF COMPLIANCE

1.     This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 10,998 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared using Microsoft Word in size 14 Equity font.

*/s/ Zach Vosseler*
Zach Vosseler
Assistant County Attorney

# CERTIFICATE OF SERVICE

On July 22, 2022, I filed this document electronically with the Court of Appeals via ECF and served a true and correct copy on all counsel of record via ECF.

*/s/ Zach Vosseler*
Zach Vosseler
Assistant County Attorney