IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRUIT
_____

No. 22-10704-AA
_____

DIANA B. CLUFF, as personal representative
of the ESTATE OF GUSTAVO BEAZ,

*Plaintiff – Appellant*;

v.

MIAMI-DADE COUNTY, CAPTAIN ARTIS WEST,
ALLISON AULT, and JEROME WELDON,

*Defendants – Appellees*.
_____

Appeal from the United States District Court
for the Southern District of Florida
No. 21-cv-23342-KMW
_____

**APPELLANT'S REPLY BRIEF**
_____

Law Offices of Max R. Price, P.A.
*Attorneys for Appellant*
6701 Sunset Drive #104
Miami, Florida 33143
Tel.: (305) 662-2272
Fax: (305) 667-3975
Primary: mprice@pricelegal.com
Secondary: mia@pricelegal.com

By: /s/ Max R. Price_____
MAX R. PRICE, ESQ.
FBN: 651494

September 12, 2022

## Certificate of Interested Persons

Pursuant to 11th Cir. R. 26.1-1(a), the Appellant hereby files a Certificate of Interested Persons and Corporate Disclosure Statement, as currently known:

Ault, Allison (Defendant/Appellee)

Beaz, Jacqueline F. (Beneficiary of Plaintiff/Appellant)

Bonzon Keenan, Geraldine (Miami-Dade County Attorney)

Cluff, Diana B. (Personal Representative and Beneficiary of Plaintiff/Appellant)

Estate of Gustavo Beaz (Plaintiff/Appellant)

Law Offices of Max R. Price, P.A. (Counsel for Plaintiff/Appellant)

McAliley, Hon. Chris M. (United States Magistrate Judge)

Miami-Dade County (Defendant/Appellee)

Miami-Dade County Attorney's Office (Counsel for Plaintiff/Appellee)

Price, Max R. (Attorney for Plaintiff/Appellant)

Vosseler, Zach (Assistant County Attorney)

Weldon, Jerome (Defendant/Appellee)

West, Artis (Defendant/Appellee)

Williams, Hon. Kathleen M. (United States District Judge)

The Appellant further states that, to the best of its knowledge, no publicly traded company or corporation has an interest in the outcome of this case or appeal.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement...............C1-1

Table of Contents ....................................................................................................i

Table of Citations................................................................................................ ii

Argument..............................................................................................................1

   I.   THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY FOR THEIR VIOLATION OF BEAZ'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS WHERE THEY ACTED WITH A PURPOSE TO CAUSE HARM. ..........................................................1

       A. Plaintiff Has Stated A Plausible Claim For A Substantive Due Process Violation As The Actions Of The Individual Defendants As Alleged Demonstrate An Extreme and Deliberate Indifference And Purpose To Cause Harm Which Shocks The Conscience. ...........................................2

       B. The Allegations As Pled Are Sufficient To Show That Beaz's Constitutional Right Was Clearly Established. ...........................................6

  II.  PLAINTIFF HAS PROPERLY ALLEGED A §1983 MUNICIPALITY CLAIM AS THE AMENDED COMPLAINT ASSERTS (A) ALLEGATIONS OF PRIOR SIMILAR CONDUCT; AND (B) ALTERNATIVELY, THE LIKELIHOOD OF CONSTITUTIONAL VIOLATIONS MADE THE NEED FOR SUPERVISION OBVIOUS. ...............................................................12

  III. IT WAS AN ABUSE OF DISCRETION TO DISMISS THE AMENDED COMPLAINT WITH PREJUDICE AND DENY LEAVE TO AMEND UPON THE PLAINTIFF'S FIRST REQUEST FOR LEAVE. .................................16

Certificate Of Compliance ................................................................................21

Certificate of Service .........................................................................................21

i

# Table of Citations

**CASES**

*Anderson v. City of Minneapolis, et al.,*

    18-1941 (8th Cir. 2019) ...................................................................................6, 8

*Ashcroft v. al-Kidd,*

    563 U.S. 731 (2011)...........................................................................................1

*Bradberry v. Pinellas County,*

    789 F.2d 1513 (11th Cir. 1986) ........................................................................7

*Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade County,*

    -- F.4th --, 2022 WL 4100687 (11th Cir. Sept. 8, 2022) ........................ 16, 19

*Cty. of Sacramento v. Lewis,*

    523 U.S. 833 (1998)...........................................................................................8

*Estate of Cummings v. Davenport,*

    906 F.3d 934 (11th Cir. 2018) ..........................................................................1

*Foman v. Davis,*

    371 U.S. 178 (1962)................................................................. 17, 18, 20

*Hamilton v. Cannon,*

    80 F.3d 1525 (11th Cir. 1996) ..........................................................................9

*Hoefling v. City of Miami,*

    811 F.3d 1271 (11th Cir. 2016). ......................................................................13

*Jackam v. Hospital Corp. of America Mideast, Ltd.,*

    800 F.2d 1577 (11th Cir. 1986) ....................................................................11

*L.S. ex rel. Hernandez v. Peterson,*

    982 F.3d 1323 (11th Cir. 2020) ....................................................................2

*Neal ex rel. Neal v. Fulton Cty. Bd. of Educ.,*

    229 F.3d 1069 (11th Cir. 2000) ....................................................................5

*Ross v. United States,*

    910 F.2d 1422 (7th Cir. 1990) ...................................................................6, 8

*Sosa v. Martin County,*

    13 F.4th 1254 (11th Cir. 2021) ....................................................................13

*Thomas v. Town of Davie,*

    847 F.2d 771 (11th Cir. 1988) ...................................................... 17, 18, 20

*Waldron v. Spicher,*

    954 F.3d 1297 (11th Cir. 2020) ...................................................................8, 9

*Williams v. Palm Coast Blue Water Int'l Corp.,*

    954 So. 2d 1264 (Fla. 5th DCA 2007)...........................................................2

**RULES**

Fed. R. Civ. P. 7 ........................................................................................17

Fed. R. Civ. P. 15 ............................................................................ 3, 16, 20

Fed. R. App. P. 32 .....................................................................................21

**OTHER AUTHORITIES**

*Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade County*, Order on Motions to

Dismiss, Case No. 20-21084, D.E. 74 (S.D. Fla. January 22, 2021) ............17

**Argument**

**I. THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY FOR THEIR VIOLATION OF BEAZ'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS WHERE THEY ACTED WITH A PURPOSE TO CAUSE HARM.**

As the Defendants/Appellees acknowledge in their Answer Brief, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). Despite Defendants/Appellees conclusory assertion, the Initial Brief specifically cites to each and every factual allegation that supports the Plaintiff/Appellant's position that the Individual Defendants acted with a purpose to cause harm. *See* Dkt. 1-1, ¶¶ 20 fn. 2, 32, 34, 37, 44, 45, 47, 48, 49, 50, 51, 52, 54, 56, 58, 59, 63, 65, 83, 93, 94; see also Dkt. 14, p. 7-10. It is Plaintiff/Appellant's position that there is no reasonable person who can review the facts presented and find that the Defendants/Appellees were not *both* plainly incompetent and knowingly violating the law – yet only one is required. This Reply Brief will focus on addressing the new issues presented by the Defendants/Appellees and clarifying those issues that have been misconstrued.

**A. Plaintiff Has Stated A Plausible Claim For A Substantive Due Process Violation As The Actions Of The Individual Defendants As Alleged Demonstrate An Extreme and Deliberate Indifference And Purpose To Cause Harm Which Shocks The Conscience.**

In the Defendant County's effort to once again sweep the continuous egregious conduct of their employees under the rug, the Defendants/Appellees attempt to confuse this Court by repeatedly raising the case of *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323 (11th Cir. 2020), in their Answer Brief and attempting to draw a false conclusion from the absence of this case in Plaintiff/Appellant's Initial Brief. (Notably, Defendants/Appellees fail to distinguish any of the cases cited by the Plaintiff/Appellant.) A plain reading of the Initial Brief would make clear to any reasonable person why the *L.S.* case was never raised. Specifically, it is inapplicable here because the Plaintiff/Appellant did *not* only argue that the Defendants/Appellees were merely deliberately indifferent to the rights of Beaz as the plaintiff in *L.S.* did. Instead, the Plaintiff/Appellant has presented allegations and argued facts in support of how the Individual Defendants acted with a purpose to cause harm. *See* Dkt. 1-1, ¶¶ 20 fn. 2, 32, 34, 37, 44, 45, 47, 48, 49, 50, 51, 52, 54, 56, 58, 59, 63, 65, 83, 93, 94; see also Dkt. 14, p. 7-10.

Because Defendants/Appellees have no argument against these facts and allegations, their only response is to attempt to shift the Court's focus from the real issues; specifically, (1) whether the Amended Complaint asserted allegations that could establish that the Appellees acted with "something more" beyond reckless

2

disregard and amounting to a purposefulness, when taken in the light most favorable to the Appellants; and (2) whether the district court abused its discretion when it outright refused to grant leave to amend without providing any basis and where none existed under Rule 15 and established U.S. Supreme Court precedent.

For example, in their Answer Brief the Defendants/Appellees make a conclusory assertion that "[i]n short, the paramedics 'did not want [Beaz] dead, so [their] conduct was not intentional the way that word is used in constitutional law.'" Answer Brief p. 14 (citations omitted). This is an assumption that is not contained within the allegations of the Amended Complaint and cannot be inferred from the allegations pleaded, and it once again shows how the Defendants/Appellees (and the district court through its underlying order) continuously undermine the rules of procedure and established precedent. Contrary to their attempts, it is indisputable that all allegations and inferences must be drawn in the light most favorable to the Plaintiff/Appellant as the non-moving party, and as such, the Plaintiff/Appellant's allegations in support of its position must be taken as true. Specifically, the allegations support Plaintiff/Appellant's theory that the Individual Defendants *did* "want [Beaz] dead" because it meant that they could go back to sleep instead of having to stay up until 5:00 a.m. *See* Dkt. 1-1, ¶¶ 20 fn. 2, 32, 34, 37, 44, 45, 47, 48, 49, 50, 51, 52, 54, 56, 58, 59, 63, 65, 83, 93, 94; see also Dkt. 14, p. 7-10.

Another example of an improper assumption drawn in the Defendants/Appellees' Answer Brief is the conclusory and unsupported contention that the Individual Paramedics' act of placing EKG leads on Beaz demonstrates that they rendered aid. It is understandable that counsel drafting the Answer Brief on the Defendants/Appellees' behalf would not understand how false that statement could be (as a person without emergency services or medical training), and it only serves to show why the Defendant County has continued to thwart justice and why discovery in this case is necessary. In summary, there are two types of EKG leads that could be placed on a patient: (1) "paddles" which allow the paramedic to *both* render aid and assess the patient's heart rhythm; and (2) "3-lead" which *only* serves to transmit information and does *not allow for any aid*. The EKG report shows that the one utilized by the Individual Paramedics on Beaz was the latter version (3-lead) although both are available to them; the 3-lead EKG is only used when the Individual Paramedics have already decided a patient is dead (before assessment) and that they will not render any aid. If the Individual Paramedics had any desire to provide care or to assess Beaz, they would have put him on "paddles." While it is not Plaintiff/Appellant's intention to engage in discussions and facts that are more properly addressed in discovery (and would be appropriate if a motion for summary judgment was before this Court), it is essential to demonstrate how each assertion raised in the Answer Brief is an improper assumption that is not based upon any

4

factual allegation and which cannot be inferred from the Amended Complaint. While Defendants/Appellees would like this Court to improperly infer that "they did not act with the requisite malice" because they purportedly "assess[ed] Beaz" (Answer Brief p. 16), this is contrary to the rules of procedure and to established precedent. It also ignores the allegations made in the Amended Complaint and theory asserted by the Plaintiff/Appellant in its Initial Brief; specifically, that the Individual Defendants *knew* Beaz was alive and in need of aid yet they purposefully denied aid so that they could return to sleep (instead of staying up for hours while they provided aid and transported him to the hospital).

While *L.S.* is wholly inapplicable given that Plaintiff/Appellant alleges and argues that the Defendants/Appellees acted with a purpose to cause harm,[1] the Appellees reference to *Neal ex rel. Neal v. Fulton Cty. Bd. of Educ.*, 229 F.3d 1069 (11th Cir. 2000), is analogous to the case before this Court and supports the Plaintiff/Appellant's position. In *Neal*, this Court held that a viable substantive due process claim was alleged as Ector violated Neal's rights because it was "so brutal, demeaning, and harmful as literally to shock the conscience of the court." *Neal,* 229 F.3d at 1075-76. Plaintiff/Appellant respectfully proffers that what the Individual

---

[1] As admitted by Defendants/Appellees, "[t]he students' theory of arbitrary or conscience shocking conduct was that the defendants acted with deliberate indifference." Answer Brief, p. 12. Whereas, in this case, the Plaintiff/Appellant's theory of arbitrary or conscience shocking conduct was that the Defendants/Appellees acted with a purpose to cause harm to Beaz.

Defendants did to Beaz was "so brutal, demeaning, and harmful" that it should "shock the conscience of" this and any other court. In this case, the Individual Defendants found a Hispanic male in his mid-60s living alone in a small, one-bedroom apartment of very humble means, and they decided that their ability to travel back to the station in less than two minutes in order to sleep [Dkt. 1-1, ¶ 31, 32, 34; *see also* Dkt. 1-1, fn. 2]) was more important than his life – that no one would care if they chose to let him die. They decided that they would not provide any aid or transport, and they boldly decided to write a false narrative report to justify and hide their conscience-shocking actions. Even the Defendant County could not justify or concoct any explanation for their actions. Dkt. 1-1, ¶¶ 63. There is not a person alive who could find this behavior to be anything but conscience-shocking. If the Defendants/Appellees are allowed to continue to misbehave in this fashion, there will be no end to this egregious behavior and the danger it presents to the public as a whole.

### B. The Allegations As Pled Are Sufficient To Show That Beaz's Constitutional Right Was Clearly Established.

Contrary to Defendants/Appellees' contention, there is persuasive authority that a paramedics' failure to render aid to someone they knew to be alive constitutes a constitutional violation. *See, e.g., Anderson v. City of Minneapolis, et al.,* 18-1941 (8th Cir. 2019); *Ross v. United States*, 910 F.2d 1422 (7th Cir. 1990). While Defendants/Appellees' cite *Wideman* and *Bradberry,* those cases are wholly

distinguishable. First, in *Wideman*, the paramedics did provide aid **and transported the plaintiff to the hospital**, whereas in this case the Individual Paramedics knew Beaz was alive and yet deliberately chose not to provide any aid or to transport him knowing full well he was alive and in desperate need of immediate medical attention (instead, falsely reporting that he was dead on arrival so that they could return to their station to sleep). In *Bradberry,* "the plaintiffs alleged that Pinellas County was grossly negligent because it inadequately trained lifeguards and one of those lifeguards proximately caused the death of Kenny Ray Thomas." *Bradberry v. Pinellas County*, 789 F.2d 1513, 1517 (11th Cir. 1986). In that case, Thomas "was not placed in a position of danger by officials of Pinellas County;" instead, "[h]e was imperiled by his voluntary act **and an agent of the county attempted, unsuccessfully, to save him from that risk**." *Bradberry v. Pinellas County*, 789 F.2d 1513, 1517 (11th Cir. 1986). In the case *sub judice*, the Individual Paramedics did the exact opposite – they made no attempts to save Beaz from any risk despite knowing that he was alive but would die if not promptly aided and transported to a hospital. Unlike *Wideman* and *Bradberry*, there was no attempt whatsoever to save Mr. Baez from probable death. Instead, they placed him in a position of danger because, had the Defendants/Appellees not assured Beaz repeatedly that they were on their way to help (as will be evidenced in discovery through the audio tapes that are available), Beaz would have called his family.

While *Anderson v. City of Minneapolis, et al.,* 18-1941 (8th Cir. 2019), is factually distinguishable, it is persuasive authority which holds that a paramedic will not be afforded qualified immunity when the paramedic denies emergency aid to someone he/she knows to be alive. *Ross v. United States*, 910 F.2d 1422 (7th Cir. 1990), is also instructive, as it found that a constitutional violation existed where officer "Johnson knew there was a substantial risk of death yet consciously chose a course of action that ignored the risk." *Ross*, 910 F.2d at 1433. Contrary to the district court's finding (Dkt. 22, p. 14 n. 9), "[b]inding case law in this Circuit holds that the 'relevant legal landscape'—including even cases from outside our Circuit and unpublished cases—are informative in a court's determination of whether a particular constitutional right is clearly established." *Waldron,* 954 F.3d at 1307 (emphasis added). For the sake of brevity, the Plaintiff/Appellant refers to and incorporates its arguments as set forth in pages 16 through 35 of its Initial Brief.

However, and notwithstanding the foregoing, it is important to make clear that the constitutional violation here is "the use of the power [by a government actor] to disable all possible life-saving possibilities with the intent to cause harm to the victim," which "is the epitome of the 'abuse of power' and 'instrument of oppression' that is at the core of what substantive due process is intended to protect against." *Waldron v. Spicher*, 954 F.3d 1297, 1311-12 (11th Cir. 2020), citing to *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998). Defendants/Appellees have made

every effort to draw the Court's attention away from this fact. As addressed in more detail within the Initial Brief, the facts of this case do not evidence mere recklessness or rashness; nor does the evidence reflect a mere disregard of a "substantial and unjustifiable risk of harm." The Individual Defendants were not "uncertain" that harm would come to Beaz. Rather, the evidence and facts set forth in the allegations – which **must** be accepted as true on a 12(b)(6) motion (contrary to what Defendants/Appellees would ask this Court to believe) – are that the Individual Defendants knew that the sole definitive consequence of their actions would, in fact, result in Mr. Beaz's death. When the EKG showed Beaz was alive and the Individual Defendants deliberately chose not to render any aid, instead falsely reporting to dispatch that Beaz was "dead on arrival" and making other false statements in the narrative (all of which is alleged in the Amended Complaint [e.g., Dkt. 1-1, ¶¶ 45, 62, 85] and must be accepted as true), the Individual Defendants knew that there would be no one else coming to help, and they guaranteed Beaz's death.

In both *Waldron* and the case to which it was compared (*Hamilton*), the officer in question halted bystander rescue efforts while believing that professional medical help was on the way. *See Waldron,* 954 F.3d at 1307; *see also Id.* at 1306, *citing to Hamilton v. Cannon*, 80 F.3d 1525 (11th Cir. 1996) (noting the deputy "then examined Hamilton's condition, but did not himself undertake CPR efforts or take any other medical action on her behalf, apparently believing that Macon County's

emergency medical technicians would arrive immediately after him"). While here, the Individual Defendants *were* the professional medical help and knew that no other help was on the way. They knew that if they did nothing, Beaz would inevitably die, and they chose to stand over him waiting until he flat-lined. Accordingly, although Plaintiff/Appellant has addressed in its Initial Brief (1) why there was notice to the Individual Paramedics (e.g., *Waldron,* etc.) and (2) how a broader clearly established principle should control in this situation, it humbly submits that the foregoing is the "something more" that the precedent in this jurisdiction requires to establish a constitutional violation of a clearly established right. Based upon these allegations and the established precedent in this jurisdiction, the Individual Defendants should have known that acting with a purpose to harm in this scenario, by refusing aid to a person they knew to be alive, would constitute a violation of a clearly established right for which they would not be afforded qualified immunity.[2] This explains why the Individual Parameters falsified their records after the fact to hide their misdeed.

Nevertheless, the question is not whether the Plaintiff/Appellant may ultimately prevail on its theories, but whether the allegations are sufficient to allow

---

[2] "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir. 1994), overruled in part on other grounds by *Hope v. Pelzer*, 536 U.S. 730, 122 (2002).

it to conduct discovery in an attempt for them prove their allegations. *Jackam v. Hospital Corp. of America Mideast, Ltd.,* 800 F.2d 1577, 1579-80 (11th Cir. 1986). In this case, the Plaintiff has alleged that the Individual Defendants decided "they would report Beaz was deceased from the moment of arrival and without taking any efforts," (Dkt. 1-1, ¶ 56) and that they knew that Beaz was alive yet chose not to render any aid. Dkt. 1- 1, ¶¶ 85, 95. The Plaintiff also provided allegations of objective facts to support these statements (e.g., that the Individual Defendants held in their hand an EKG reading which showed a heart rate and showed that Beaz was alive and not flat-lined [Dkt. 1-1, ¶¶44-45, 58-59]). The facts alleged (falsification of the PCR [Dkt. 1-1, ¶¶ 45, 94], falsification of response times [Dkt. 1-1, ¶ 37], knowledge that Beaz was alive but chose not to render aid [Dkt. 1-1, ¶¶ 85, 95], standing and waiting over Beaz until he finally flat-lined and hoping the EKG reading transmitted to the PCR would not show that he was alive when they first evaluated him [Dkt. 1-1, ¶ 49-51, 58-59; Dkt. 14, p. 10], and that the EMS Captain concluded that he "was not able to find any legitimate reasons . . . as to why Rescue 27 made the decision not to resuscitate [i.e., give oxygen to] the patient" [Dkt. 1-1, ¶ 63]) exemplify purposeful actions which constitute a violation of Beaz's clearly established constitutional rights.

**II. PLAINTIFF HAS PROPERLY ALLEGED A §1983 MUNICIPALITY CLAIM AS THE AMENDED COMPLAINT ASSERTS (A) ALLEGATIONS OF PRIOR SIMILAR CONDUCT; AND (B) ALTERNATIVELY, THE LIKELIHOOD OF CONSTITUTIONAL VIOLATIONS MADE THE NEED FOR SUPERVISION OBVIOUS.**

As addressed in the Initial Brief in more detail (incorporated herein by reference), the Defendant County knew of the need to supervise based on prior constitutional violations, prior instances of falsification of response times, and falsification of reports. Despite Defendants/Appellees' conclusory assertion to the contrary, the Amended Complaint does make several allegations in support of this knowledge and the Defendant County's unofficial policy or custom of "don't ask, don't tell" that led to and encouraged the conduct of the Individual Defendants in this case (who were emboldened in their actions through the knowledge of this policy or custom and knowledge that they would never be disciplined commensurate with their actions). *See e.g.,* Dkt. 1-1, ¶ 22, 24, 25, 63, 65, 66, 68, 73; *see also* Dkt. 14, p. 16-17. Under the applicable pleading standard, Plaintiff/Appellant proffers this is sufficient to survive a Motion to Dismiss. These allegations include prior instances of falsifying en route times, failure to follow policies, and pronouncements of citizens as "Dead on Arrival" when County's employees knew that citizens were in fact alive. *Id.* The lower Court rejected these allegations by stating that there was no "citation to any report, to any cases involving similar violation, or to any newspaper accounts indicating even one other instance arising under such alleged

customs." Dkt. 22, p. 8 n. 6. The lower Court again seems to require Plaintiff to prove the claims against the County in the pleadings' stage, which is in effect applying an impermissible heightened pleading standard. *Hoefling v. City of Miami*, 811 F.3d 1271, 1276 (11th Cir. 2016).

Notwithstanding, consistent with *Sosa v. Martin County,* 13 F.4th 1254 (11th Cir. 2021), *vacated on grant of reh'g en banc,* 21 F.4th 1362 (11th Cir. 2022), which Defendants/Appellees cite, "facts based 'upon information and belief' may support a claim when facts are not within the knowledge of the plaintiff but he has sufficient data to justify an allegation on the matter." *Sosa*, 13 F.4th at 1279 (cleaned up). In this case the Plaintiff/Appellant does have data to justify this allegation of prior instances both from neighbors in the same apartment building where Beaz was left to die and from other employees of the Defendant County. In every case Plaintiff/Appellant has found in this jurisdiction, where a district court finds that the allegation is insufficient, the plaintiff is at least afforded an opportunity to amend. In this case, the district court outright refused without any basis, and as previously noted, this was the Plaintiff/Appellant's very first request for leave to amend of the district court. Furthermore, and of note, Plaintiff/Appellant did try to collect records evidencing and corroborating this knowledge of prior similar instances, but the County failed to comply with a public records' request that was made for that specific purpose. See Dkt. 14, p. 14. The County should not be rewarded at this stage

for purposely concealing information. Requiring more of any plaintiff at this stage, as the lower Court has done, especially when a plaintiff is prevented access to information, creates absolute immunity for the County. If this Court agrees, it would only perpetuate the very injustice and deliberate indifference by the County which the Plaintiff seeks to eradicate.

Defendants/Appellees seem to concede in the Answer Brief (p. 32) that allegations of the Defendants/Appellees failure to comply with records request would be enough under *Sosa*, but they take issue with the fact that this was not raised in the Amended Complaint. However, as further detailed below, the Plaintiff/Appellant's application to the court for an order granting leave to amend was sufficient under the rules of procedure and binding precedent, and the basis for the amendment (including knowledge of prior incidents and the Defendant County's act of subverting the discovery of information) was detailed in this application to the district court as the required basis for leave.

Finally, the Defendants/Appellees attempt to argue that the precedent of *Gold* is inapplicable here because paramedics performing a life-saving function are not akin to police officers with weapons. Answer Brief, p. 35. This argument lacks merit based upon this Court's prior findings in *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), which was raised in the Initial Brief but which (unsurprisingly) Defendants/Appellees do not address. In *Hill*, this Court

acknowledged that "[c]ases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Hill*, 40 F.3d at 1187. Furthermore, just as police officers, paramedics are armed with weapons – oftentimes more weapons than a police officer has at his disposal. Paramedics have, at any given moment, numerous drugs – all of which can severely harm or kill a person if the dosage is incorrect or if administered to the wrong person. Employing paramedics with a lack of supervision, providing them with life-saving tools and drugs that can severely harm or kill, but failing to take any steps whatsoever to ensure that they are actually performing their job function to save lives, is tantamount to the scenarios contemplated in *Gold* and which would demonstrate an "obvious" need for supervision. *Gold*, 151 F.3d at 1352.

As further support for this theory of liability, the Plaintiff has also alleged known facts, including the existence and designation of "Retirement Stations" (such as the one involved in this case) and that these are the worst offenders for violations of the Defendant County's policies. See Dkt. 1-1, ¶¶ 20, 73(h). Despite knowing of these employee-designated "Retirement Stations," of the need to properly supervise these stations to ensure compliance, and having the ability to monitor response times and review all PCRs to ensure that policies are being followed, the County takes no

15

such action even though it understands that its employees will be the deciding factor between life and death for its constituents. The County is the only emergency services department in all of South Florida that does not have an established policy in place establishing at least one or two levels of supervisory review for each PCR that is submitted following a medical call, yet these allegations seem to have been completely ignored by the lower Court. See Dkt. 1-1, ¶¶ 20, 73(h); Dkt 14, p. 17. Plaintiff also believes discovery will show that it is the only emergency services department in the entire State of Florida that fails in this regard. The aforementioned allegations sufficiently establish, for purposes of a Rule 12(b)(6) motion, that the Defendant County knew of a need to supervise, but it made a deliberate choice not to take any action. *See Gold,* 151 F.3d at 1350.

### III. IT WAS AN ABUSE OF DISCRETION TO DISMISS THE AMENDED COMPLAINT WITH PREJUDICE AND DENY LEAVE TO AMEND UPON THE PLAINTIFF'S FIRST REQUEST FOR LEAVE.

Appellant respectfully submits that the decision in *Chabad Chayil, Inc. v. School Board of Miami-Dade County*, -- F.4th --, 2022 WL 4100687 (11th Cir. Sept. 8, 2022), does not reverse the long-established precedent of the United State Supreme Court, consistent with Rule 15(a), which holds that leave to amend should be freely given and that, although the courts have discretion, "**outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with**

**the spirit of the Federal Rules**." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added); *see also Thomas v. Town of Davie*, 847 F.2d 771, 772 (11th Cir. 1988). The district court's underlying Order is an outright refusal of leave and does not provide any basis for the denial. Notably, in *Chabad Chayil, Inc.*, the district court specifically addressed the plaintiff's request for leave to amend in the order on appeal, stating: "the Court denies Chabad Chayil's requests for leave to amend, inserted as afterthoughts, at the conclusion of its oppositions to the Defendants' motions to dismiss" and further addressing the substantive basis for the denial. *Chabad Chayil, Inc. v. School Board of Miami-Dade County*, Civil Action No. 20-21084, Order Granting Motions to Dismiss, D.E. 74, p. 19-20 (S.D. Fla. January 22, 2021).

In the case *sub judice* the district made absolutely no mention of the request for leave, let alone to provide any basis for the denial. Furthermore, the requests for leave in this case were not mere "afterthoughts, at the conclusion of its opposition." Instead, the Appellant's included the request for leave to amend in two different sections of its motion[3] to deny Defendants/Appellees request for dismissal, including

---

[3] Federal Rule of Civil Procedure 7(b)(1) defines a motion as an application to the court for an order; it does not require that such application be titled in a specific manner. In its Response in Opposition to Defendant's Motion to Dismiss, the Plaintiff/Appellant respectfully requested that the district court enter an order either denying the request for dismissal or allowing Plaintiff/Appellant the opportunity to amend. Dkt. 4, p. 19, 21. This was, under the letter of the law, a motion for leave to

supporting case law. *See* Dkt. 14, p. 19, 21. Plaintiff/Appellant also provided the substance of what the amendment would contain. *See* Dkt. 14, p. 5-17, 19, 21. Denying leave to amend in this case – upon the first and only request made[4] – was not only an abuse of discretion under binding precedent, but it is also an injustice under the facts presented. It is a cornerstone of American jurisprudence that cases should be tried on the merits and should not be dismissed unless it is absolutely clear that no cause of action could exist; even then, leave to amend should be freely granted in the interests of resolving cases on the merits. *See Foman v. Davis*, 371 U.S. 178, 181-82 ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"). This Court has reiterated this proposition. *See, e.g., Thomas*, 847 F.2d 771, 772. The decisions such as that of the district court in this case are the very reason that municipalities

---

amend presented to the district court and which said court outright refused without providing any basis.

[4] While the Plaintiff/Appellant was proceeding under an Amended Complaint, the amendment to the original Complaint was filed in state court before the Defendants/Appellees were served (without a request for leave) and before the case was removed to federal court. In essence the district court truly denied a first substantive amendment of the complaint, which contravenes established precedent.

continue to cause harm and allow knowing constitutional violations, unfettered and with impunity.

Defendants/Appellees' argument does not change the black letter of the Order, and contrary to Appellees' assertion, the *Chabad Chayil, Inc.* decision made every effort to detail the objective, substantive reasons as to why the complaint in that case should have been denied whereas in this case, the district court made every effort to improperly draw inferences in the light most-favorable to the moving party (Appellees) and to disregard and pick-and-choose which allegations of the Amended Complaint it would consider. *See, e.g.,* Initial Brief, p. 21-30.

In the Amended Complaint, the Plaintiff/Appellant has alleged facts to demonstrate that the Individual Defendants acted purposefully and with the intent to harm. While the district court may feel that a "key" word or catchphrase may not have been used, even if true, this does not support dismissal of the Amended Complaint with prejudice. In fact, it demonstrates the complete opposite – that the Plaintiff/Appellant has alleged facts in support of its claims instead of reciting formulaic phrases. At a minimum, if the district court had any doubt, it should have granted leave to amend after reviewing the Plaintiff/Appellant's Response in Opposition which made an application for an Order denying Defendants/Appellees' Motion to Dismiss or granting Plaintiff/Appellant's motion for leave to amend; this application also addressed the theories of liability and additional allegations that

would be included (*See* Dkt. 14, p. 5-17, 19, 21). This is the very reason that the Plaintiff requested leave to amend – so that it could address any concerns and remedy any pleadings' issues, and *no prior amendment had been requested of the district court*. Contrary to what the Defendants/Appellees would have this Court believe, the amendment of the complaint was done in state court before the Defendants/Appellees were ever served. There was also no undue delay, bad faith or dilatory motive on the Plaintiff/Appellant's part, and the Defendants/Appellees would not have been prejudiced by the amendment. Furthermore, the amendment would not be futile; contrary to Defendants/Appellees' conclusory assertion, the Plaintiff/Appellant does allege as part of its §1983 claim that the Individual Defendants acted with a purpose to cause harm, as is detailed through its Amended Complaint [Dkt. 1-1], Response seeking denial or leave to amend [Dkt. 14], and its Initial Brief. The case *sub judice* was in its initial stages and before any discovery had commenced. Justice requires leave to amend and that this case be judged on the merits. Fed. R. Civ. P. 15; *Foman*, 371 U.S. at 182; *Thomas*, 847 F.2d at 772.

Accordingly, Plaintiff/Appellant respectfully requests that the district court's Order be reversed, and if this Court deems necessary, that Plaintiff/Appellant be provided with an opportunity to amend its pleading.

Dated: September 12, 2022

LAW OFFICES OF MAX R. PRICE, P.A.
By: /s/ Max R. Price_____
MAX R. PRICE, ESQ., FBN: 651494
*Attorney for Plaintiff/Appellant*

### Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

I HEREBY CERTIFY that this document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,131 words.

This document also complies with the typeface requirements of the Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2204, in 14-point Times New Roman text.

Dated: September 12, 2022

By: /s/ Max R. Price_____
MAX R. PRICE, ESQ.
FBN: 651494
*Attorney for Plaintiff/Appellant*

### Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing has been e-filed via CM/ECF and furnished via e-mail, this 12th day of September, 2022, upon the following: Zach Vosseler, Assistant County Attorney, 111 N.W. First Street, Suite 2810, Miami, Florida 33128, zach@miamidade.gov.

By: /s/ Max R. Price_____
MAX R. PRICE, ESQ.
FBN: 651494